**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**DONTE BOOKER,**

            Petitioner,

    **v.**                                                    **Civil Action No. 5:24-CV-43**
                                                              Judge Bailey

**MELISSA J. BAYLESS,** Warden**,**

            Respondent.

## REPORT AND RECOMMENDATION

### I.        Introduction

On March 6, 2024, the pro se petitioner filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. [Doc. 1].  Petitioner is a federal inmate at FCI Morgantown, in Morgantown, West Virginia, serving a 200-month term of imprisonment, to be followed by a five-year term of supervised release, imposed by the United States District Court for the Northern District of Ohio on July 17, 2013, for his conviction for attempt to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846; §841(a)(1) and (b)(1)(A). [Docs.1 at 2; 1-1 at 1; 13-2 at 2; 13-3 at 2].

Petitioner complains that the Bureau of Prisons ("BOP") has violated the Second Chance Act ("SCA") by not following the recommendation of his unit team with respect to determining his placement date in a Residential Reentry Center ("RRC"), commonly known as a "halfway house."  He complains that his Fifth Amendment due process rights, as well as his Eight Amendment right to protection against cruel and unusual punishment, were violated when his RRC placement date was changed by the Residential Reentry

1

Manager ("RRM") from the one originally recommended by his unit team. [Docs. 1 at 5 -- 6; 1-1 at 2 – 4].  He asks the Court for an Order directing the BOP to "accommodate" his unit team's recommended home confinement date of August 30, 2024, and to transfer him to a halfway house other than the one designated for him in Ohio, so that the unit team's recommended RRC placement date of March 12, 2024, can be accommodated. [Docs. 1 at 8, 1-1 at 4].  In addition to his §2241 petition, he has filed a motion for a preliminary injunction requesting the Court to order his immediate release to RRC placement. [Doc. 7].

The undersigned made a preliminary review of the petition and determined that summary dismissal was not warranted at that time.  Accordingly, an Order to Show Cause was issued to the respondent. [Doc. 8].  Respondent then filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, along with an accompanying memorandum of law on May 15, 2024. [Doc. 13].  On May 22, 2024, the petitioner filed a Response to the Motion to Dismiss. [Doc.15].  The matter is now before the undersigned for a recommended disposition pursuant to LR PL P 2.  For the reasons set forth below, the undersigned recommends that respondent's motion be granted and that the petition be dismissed.

## II.    Background

On September 22, 2023, petitioner's unit team reviewed his eligibility for RRC Placement, using the five factors set forth in 18 U.S.C. § 3621(b), and an Institutional Referral Form was completed recommending an RRC placement date of March 12, 2024. [Docs.13-2 at 2; 13-5].  According to the petitioner's unit team, this referral represented a recommended 12-month (365 day) placement pursuant to the SCA, along with application

of petitioner's 445 remaining days of FSA ETC, equating to approximately 797 days of RRC placement.[1] [Docs.1-2; 1-3 at 2; 1-4 at 2; 13-2 at 2; 13-5]. The unit team further recommended that, to the extent that no RRC placements were available, petitioner be transferred to home confinement on August 30, 2024, which would incorporate application of petitioner's 445 days of FSA earned credits to his statutory home confinement eligibility date. [Docs. 13-2 at 2; 13-5 at 2].

Although the petitioner's unit team recommended a placement date of March 12, 2024, the RRM was only able to authorize a placement date of February 10, 2025 for the petitioner, due to limited bed space at the designated RRC. [Docs. 13-2 at 2; 13-6; 1-2; 1-3 at 2; 1-4 at 2; 13-2 at 2]. [2]  This RRC placement date provides petitioner with a 462-day placement in a halfway house. [Doc. 13-2 at 2].

Petitioner filed administrative remedy requests at the institutional and regional office levels, requesting placement in an RRC pursuant to his unit team's recommended date. [Docs. 1-2; 1-3; 1-4; 13-2 at 4].  His requests were denied at each level. [Id.]. Petitioner did not seek review at the Central Office level, and instead filed the instant petition.

---

[1] Petitioner has received the benefit of 365 days of his total 810 FSA credits applied to his supervised release date, with the remaining 445 credits being applied to his RRC placement. [Docs. 13-2 at 2; 13-5 at 2; 1-2; 1-3 at 2; 1-4 at 2 ].

[2] The Affidavit of Misty Shaw, Paralegal for the BOP Mid-Atlantic regional Office [Doc.13-2] submitted in support of respondent's motion for summary judgment affirms that the decision of the RRM was based on limited available bed space at the RRC and cites Document 13-6 in support thereof. [Doc. 13-2 at ¶15]. The undersigned notes that this information is not present in the cited document; nonetheless, this fact does not appear to be in dispute.

### III. <u>Legal Standards</u>

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction.  A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment.  **Adams v. Bain**, 697 F.2d 1213, 1219 (4th Cir. 1982); **Mims v. Kemp**, 516 F.2d 21 (4th Cir. 1975).  Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction.  No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  *See **Materson v. Stokes***, 166 F.R.D. 368, 371 (E.D. Va. 1996).  Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.  *See* Fed. R. Civ. P. 12(h)(3).

### B.  Motion to Dismiss for Failure to State a Claim

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is plausible on its face.'  **Bell Atl. Corp. v. Twombly**, 550 U.S. 554, 570 (2007) (emphasis added)."  **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008).  When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiffs, and must view the allegations in a light

4

most favorable to the plaintiffs.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice.  *Anheuser-Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995).  In *Twombly*, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *Id*. at 555, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." *Id*. at 570.

This Court is well aware that "[m]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion."  *Williams v. Branker*, 462 F. App'x 348, 352 (4th Cir. 2012).  "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment."  *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006).  However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint.  *Id*. at 396–97.

### C. Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine

issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986).  Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." **Anderson**, 477 U.S. at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts**." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986).  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56(c); **Celotex Corp.**, 477 U.S. at 323–25; **Anderson**, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." **Anderson**, 477 U.S. at 249 (citations omitted).

Finally, this Court notes that pro se allegations are held to a less stringent standard than those drafted by lawyers and must be liberally construed.  **Haines v. Kerner**, 404 U.S. 519, 520 (1972); **Hudspeth v. Figgins**, 584 F.2d 1345, 1347 (4th Cir. 1978).

### III.    Analysis

#### A. Exhaustion of administrative remedies

To the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute.   Instead, courts have judicially imposed a duty on prisoners to exhaust administrative remedies before bringing a claim under § 2241.

See ***Braden v.30th Judicial Circuit Court***, 410 U.S. 484, 490-91 (1973*); see also* ***McClung v. Shearin***, 90 F. App'x 444, 445 (4th Cir. 2004) (*citing* ***Carmona v. United States Bureau of Prisons***, 243 F.3d 629, 634-35 (2d Cir.2001); ***Sites v. Warden, FCI Hazelton,*** No. 5:21-CV-184, 2022 WL 706959, at *1 (N.D. W.Va. Feb 15, 2022) (Mazzone, M.J.), *report and recommendation adopted*, No. 5:21-V-184, 2022 WL 698061 (N.D. W.Va. Mar. 8, 2022) (citations omitted). Because the exhaustion requirement is judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances, and accordingly, a number of courts have found that the exhaustion requirement may be waived where the administrative process would be futile. ***Sites*** at *1 (*citing* ***LaRue v. Adams***, 2006 WL 1674487, at *5 - 7 (S.D. W.Va. June 12, 2006) (citations omitted)). However, even in cases where the administrative process is unlikely to grant an inmate relief, courts have enforced a longstanding policy favoring exhaustion. ***Id.*** (citing ***Alexander v. Hawk***, 159 F.3d 1321, 1327 -- 28 (11th Cir. 1998)).

The BOP provides a four-step administrative process through which prisoners can request a review of any aspect of their imprisonment, beginning with an  informal request to prison staff (BP-8) and progressing to the filing of a written complaint to the warden in the event a satisfactory resolution is not achieved informally (BP-9), followed by an appeal to the Regional Director(BP-10), and ultimately a final appeal to the Office of General Counsel (BP-11). *See* 28 C.F.R. § 542.10, *et seq.*  An inmate is not deemed to have exhausted administrative remedies until a complaint has been filed at all levels. 28 C.F.R.§ 542.10-542.15; ***Gibbs v. Bureau of Prison Office, FCI***, 986 F.Supp. 941, 943 (D. Md. 1997).

In this case, the petitioner marked "yes" in response to the question as to whether he had presented his claim to the BOP for administrative action. [Doc. 1 at 8]. He attached copies of his BP-8, BP-9, and BP-10, along with the agency denials at each of these three levels, to his petition. [Docs. 1-2, 1-3, 1-4]. With respect to his failure to file a BP-11 appeal to the BOP Office of General Counsel, petitioner stated that he "did not appeal within the 30-day time period," that the time to file the appeal expired, and that this circumstance somehow resulted in him "exhausting [the] Administrative Remedy process." [Doc. 1-1]. He further claimed that he was "presenting valid evidence of facts showing 'cause' and 'prejudice' beyond a reasonable doubt in this matter," although he offered no further explanation or evidence in support of that contention. [Doc. 1-1 at 2]. He subsequently filed a motion for an injunction, in which he asserted, for the first time, that the reason he could not timely file his BP-11 was because unidentified unit staff members refused to provide him with the form for filing it. [Doc. 7 at 1]. He asked the Court to waive exhaustion. [Id. at 2]. The undersigned finds that while such a claim, if sufficiently substantiated, may, in some instances, excuse exhaustion on the grounds that the administrative grievance process was unavailable to a petitioner, no further inquiry is required in this case as to whether this after-the-fact allegation is sufficient to overcome the exhaustion requirement, since dismissal of the petition herein is being recommended based on the merits of petitioner's claims, not on his failure to exhaust. Thus, even if petitioner's claims could survive his failure to exhaust administrative remedies, his petition is nonetheless subject to dismissal.

**B. Petitioner has failed to demonstrate that the BOP violated the Second Chance Act or that he suffered any Constitutional deprivations.**

Petitioner claims that pursuant to "statutory law" he is entitled to 365 days (12 months) RRC placement and that the BOP abused its discretion and violated the Second Chance Act by not following his unit team's recommendation regarding his RRC placement date. [Docs.1 at 5; 1-1 at 4]. He also alleges that his Fifth and Eighth Amendment rights were violated.

Assignments to RRCs are governed by 18 § 3624(c)(1), which was amended by the enactment of the Second Chance Act and provides that [t]he Director of the BOP shall "to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility." 18 U.S.C. § 3624(c)(1), as amended by the Second Chance Act of 2007, effective April 9, 2008. [3]

The Act further required the BOP to issue new regulations "to ensure" that placements in RRCs "are (A) conducted in a manner that is consistent with § 3621(b) of this title; (b) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. §

---

[3] While § 3624(c)(1) of the Second Chance Act limits the time that can be spent halfway house to 12 months, this limitation was modified by the First Step Act in §3624(g), which relates to inmates participating in recidivism reduction programing and the BOP's Risk and Needs Assessment System. With respect to prerelease custody, 3624(g)(10) provides that the prerelease custody time limits imposed under subsections (b) and (c) do not apply to prisoners in this category, such as the petitioner.

3624(c) (6).  In compliance with the statute, the BOP adopted regulations, which are set forth in 28 C.F.R. §§ 570.20-22. Thus, the BOP's authority to place prisoners in an RRC derives from two statutes: 18 U.S.C. §§ 3624(c)(1) and 3621(b).

Pursuant to §3624(c)(6) and the regulations, the BOP determines when a prisoner will be assigned to an RRC by conducting an individualized assessment of the prisoner's particular circumstances, using the following five factors set forth in § 3621(b):

(1)  The resources of the facility contemplated;

(2) The nature and circumstances of the offense;

(3) The history and characteristics of the prisoner;

(4) Any statement by the court that imposed the sentence—(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and

(5) Any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. §3624(c)(6); §3621(b); 28 C.F.R. § 570.22.  The determination must be made on an "individual basis" and the placement must be "off sufficient duration to provide the greatest likelihood of successful reintegration into the community." 28 C.F.R. § 570.22. Clearly then, on its face, and contrary to petitioner's assertions, the SCA does not guarantee a one-year RRC placement.  Instead, the statute directs the BOP to *consider* placing an inmate in an RCC based on the specific five-factor criteria of § 3621(b). Indeed, "[a]s evidenced by the phrase 'to the extent practicable' and the direction to determine placement on an 'individual basis,' the decision to grant the benefits provided by the statute is one of discretion." *Smith v. Warden,* No. 1:18-cv-10002, 2018 WL 7104891 at *4 (S.D. W.Va  Dec. 21, 2018)  (citing 28 C.F.R. §570.22) (Eifert, M.J.) *report and*

10

*recommendation adopted,* No. 1:18-cv-10002, 2019 WL 289813 (S.D. W.Va.  Jan. 22, 2019).  Therefore, "despite a prisoner's eligibility, the BOP has the 'exclusive discretion to determine whether, and for how long, to release an inmate to an RRC.'" ***Davis v. Hendrix***, No. 2:18-CV-67, 2019 WL 34005, at *3 (N.D. W.Va. Jan. 30, 2019) (internal citations omitted); ***Nehrenz v. Hendrix***, No. 2:18-CV-38,  2018 WL 5726198, at *3  (N.D. W. Va. November 1, 2018) (internal citations omitted).

Moreover, the statute provides that a BOP designation is not subject to judicial review. 18 U.S.C. § 3625.  Pursuant to the Administrative Procedures Act ("APA"), "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute is entitled to judicial review thereof," *except* to the extent that a statute precludes judicial review. 5 U.S.C. §§ 701 and 702. With respect to decisions by the BOP as to how much time a prisoner spends in an RRC, Congress has expressly excluded § 3621 and § 3624 from judicial review under the Administrative Procedures Act ("APA"), as set forth in § 3625, which provides that the provisions of the APA permitting judicial review of agency action "do not apply to the making of any determination, decision, or order under [18 U.S.C. § 3264]." 18 U.S.C. § 3625.   Accordingly, "any substantive decision by the BOP with regard to the petitioner's eligibility for RRC placement, or the length of time in an RRC, is not reviewable by this Court." ***Newman v. Ziegler***, No. 1:10-CV-90, 2010 WL 11520048, at *3  (N.D. W.Va.  Sept. 7, 2010), *report and recommendation adopted*, No. 1:10-CV-90, 2010 WL 11530383 (N.D. W. Va.  Dec. 20, 2010) *aff'd*, 425 Fed App'x 255 (4th Cir 2011); ***Nehrenz,*** supra,  at *3 (internal citations omitted); ***Davis***, supra, at  *3 (internal citations omitted).

Nonetheless, "even where judicial review under the APA is specifically excluded by statute, the court may still review whether there is clear evidence of unconstitutional conduct or evidence that the agency acted outside the scope of its authority." **Davis**, supra at * 3; **Nehrenz** , supra at *3 (internal citations omitted).  In this regard, the Court's review of the BOP's compliance with the requirements of the Second Chance Act is limited to ensuring that the BOP used the five factor criteria in making an individualized determination of eligibility.  **Smith**, supra, at *6.

Based on a review of the record herein, the undersigned finds that as required by the SCA, and as supported by the Institutional Referral Form for RRC placement, the BOP properly reviewed petitioner's case for RRC placement on an individualized basis, and in accordance with the § 3621(b) five factors in recommending his placement. [Doc. 13-5 at 2].  Whereas petitioner may disagree with the RRM's decision following the Referral and recommendation, nothing in either the SCA or § 3621(b) entitles him to a guaranteed placement in an RRC.  Thus, because the decision whether to make such placement is clearly a matter of prison management within the knowledge and expertise of BOP officials, this Court cannot intervene in that decision. *See Nehrenz*, supra, at *3. Petitioner cannot show that BOP officials violated the Second Chance Act, and the issue then becomes whether petitioner has stated a clear constitutional violation.   The undersigned finds that he has not.

 A due process claim requires petitioner to establish that he was deprived of some recognized liberty or property interest. **Davis** , supra, at *4 (internal citations omitted). It is well-established, however, that an inmate has no constitutional right or liberty interest to be confined to a particular institution, nor any "justifiable expectation that he will be

confined in a particular prison. ***Davis***, supra at * 3; ***Nehrenz*** , supra at *3.  It is likewise well-settled that a prisoner has no constitutional right to be placed in any particular correctional facility, even though the degree of confinement in one facility may be quite different from that in another. *See **Olim v. Wakinekona***, 461 U.S.238, 245–46.  Where Congress has given federal prison officials full discretion to control matters of housing and eligibility for rehabilitative programming, a federal prisoner can have no legitimate statutory or constitutional entitlement sufficient to invoke due process. ***Moody v. Daggett***, 429 U.S. 78, 88 n. 9 (1976).

As noted herein, the SCA does not require that a prisoner receive a full 12 months of RRC placement, only that he or she be considered "to the extent practicable." 18 U.S.C. § 3624(c)(1).  A prisoner likewise has no protected interest in being placed in an RRC for any particular amount of time. *See **Miller v. Lappin***, 2009 WL 166873, *2 (W.D. Va., 2009) ("The Second Chance Act does not require the court or BOP officials to place an inmate in community or home confinement for any portion of his sentence. The decision regarding such placement remains discretionary.").Nor does the SCA empower the Court to reduce sentences or change the location of where a sentence is to be served.

Similarly, petitioner does not have a constitutional right to placement in home confinement. Indeed, as this Court has recognized "a prisoner has no constitutional right to confinement in any particular place, including in home confinement." ***Bowling v. Hudgins,*** No. 5:19-CV-285, 2020 WL 1918248, at *5  (N.D.W. Va. Mar. 16,2020), citing ***McKune v. Lile***, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise.") (Mazzone, M.J.), *report and recommendation* adopted, No. 5:19-CV-285, 2020 WL 1917490 (N.D. W Va. Apr. 20,

13

2020). Because the BOP has properly exercised its discretion in accordance with the SCA, the petitioner was not denied due process.

Petitioner also claims that the BOP's failure to honor his unit team's original recommendation to place him in home confinement on August 30, 2024, in the event that the recommended RRC placement date could not be awarded, violated his Eighth Amendment right. [Docs. 1 at 6; 1-1 at 3 - 4].  He further contends that if the designated RRC could not accommodate him on the recommended placement date, then the RRM should have taken steps to "transfer" him to a different halfway house where there was bed space or give him the home confinement release date of 8-30-24. [Doc.1 at 6].  He claims that the BOP's decision has "prolonged" his incarceration for an additional year, prejudicing him, and causing him to "suffer mentally and physically" in violation of the Eight Amendment's prohibition against cruel and unusual punishment. [Doc. 1-1 at 3 – 4]. Because § 3624(c) does not mandate a prisoner's pre-release to a CCC or halfway house, the petitioner's continued confinement in an actual prison facility, as opposed to pre-release custody in an RRC or home confinement, does not equate to an excessive sentence in violation of the Eighth Amendment.

While the undersigned certainly appreciates that petitioner has been participating in, and has successfully completed, numerous programs and productive activities, nonetheless, pursuant to 18 U.S.C. § 3621(b), it is the BOP that "shall designate the place of the prisoner's imprisonment" and such determinations are exempted from judicial review. Petitioner has failed to demonstrate that the BOP violated the Second Chance Act or that his Fifth and Eighth Amendment rights were violated.

### IV. <u>Recommendation</u>

For the foregoing reasons, the undersigned recommends that the Motion to Dismiss, or in the Alternative, for Summary Judgment [**Doc. 13**] be **GRANTED** and the petition [**Doc. 1**] be **DENIED** and **DISMISSED WITH PREJUDICE**. It is further recommended that the Motion for Preliminary Injunction **[Doc. 7]** be **DENIED** as moot.

Within fourteen (14) days after being served with a copy of this report and recommendation, the petitioner may file with the Clerk of Court **specific written objections identifying those portions of the recommendation to which objection is made and the basis for such objections**.  A copy of any objections shall also be submitted to the United States District Judge.  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour***, 889 F.2d 1363 (4th Cir. 1989); ***Thomas v. Arn***, 474 U.S. 140 (1985); ***Wright v. Collins***, 766 F.2d 841 (4th Cir. 1985); ***United States v. Schronce***, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the  Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

**DATED**: June 27, 2024.

*/s. James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE